# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KENT G. SAVAGE,           )
                                   )
       Plaintiff,          )
                                   )
v.                          )      **Case No. CIV-15-670-HE**
                                   )
JEFFERY TROUTT et al.,      )
                                   )
       Defendants.      )

## REPORT AND RECOMMENDATION

Plaintiff Kent G. Savage, an Oklahoma prisoner appearing pro se, has filed this civil rights action alleging violations of federal and state law. Compl. (Doc. No. 1) at 1-20.[1] Chief United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). The four Defendants have filed a Motion to Dismiss (Doc. No. 39), and Plaintiff has filed a Motion for Summary Judgment (Doc. No. 48) . Each party has responded to the other's potentially dispositive motion (Doc. Nos. 47, 52). For the reasons that follow, the undersigned recommends that the Court grant in part and deny in part Defendants' Motion to Dismiss and deny Plaintiff's Motion for Summary Judgment.

## I. Defendants' Motion to Dismiss

Defendants, comprising the Oklahoma Department of Corrections ("ODOC") and three current or former ODOC employees, have moved to dismiss Plaintiff's § 1983

---

[1] Citations to documents filed with this Court use the page and attachment numbers assigned by CM/ECF. When quoting from Plaintiff's filings, the undersigned has occasionally corrected capitalization, punctuation, and unambiguous abbreviations or spelling errors to improve readability.

claims and one state-law claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Defs.' Mot. to Dismiss at 3-4 (§ 1983 official-capacity claims for damages), 5-6, 8-10 (§ 1983 individual-capacity claims), 12-14 (state-law grievance-procedure claim). Their motion does not directly address Plaintiff's claim that Defendant ODOC violated Title II of the Americans with Disabilities Act ("ADA") or Plaintiff's state-law claim for intentional infliction of emotional distress ("IIED") against Defendants Dr. Jeffery Troutt, Tami Grogan, and Genese McCoy. *See id.* at 13 n.2; Fed. R. Civ. P. 7(b)(1)(B). However, because Plaintiff is a prisoner and his lawsuit is an "action brought with respect to prison conditions under . . . [f]ederal law," this Court has an obligation to dismiss any portion of Plaintiff's complaint that "is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." *See* 42 U.S.C. § 1997e(c)(1); *accord* 28 U.S.C. § 1915A(b).

A.      *Standard of Review and Matters Considered*

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the complaint itself. *See MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1221 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the well-pled facts, accepted as true and viewed in the plaintiff's favor, "allow[] the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged" under the governing law.[2]  *Id.* at 678-79 (explaining that legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not well-pled facts "entitled to the assumption of truth"); *see Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013).  The Court applies the same standard of review to screening dismissals under §§ 1915A and 1997e(c)(1) as to dismissals under Rule 12(b)(6).  *Cf. Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) ("We apply the same standard of review for dismissals under § 1915(e)(2)(B)(ii) that we employ for [Rule 12(b)(6)] motions to dismiss for failure to state a claim." (citing 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted."))).

Determining whether a claim survives dismissal is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  In making this determination, the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling

---

[2] A pro se plaintiff's complaint must be "construed liberally and held to a less stringent standard than formal pleading drafted by lawyers," so that any potentially valid claim can be fairly decided on its merits.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, a pro se plaintiff must allege "sufficient facts on which a recognized legal claim could be based," *id.*, and district courts should not "construct . . . claims or grounds [for] relief" not fairly presented in the complaint, *Windsor v. Colo. Dep't of Corr.*, 9 F. App'x 967, 970 (10th Cir. 2001).  Similarly, in keeping with its obligation "not . . . to assume the role of advocate for the pro se litigant," *Hall*, 935 F.2d at 1110, the district court is not required to overlook instances where a pro se plaintiff has "'ple[d] himself out of court by pleading facts that undermine the allegations set forth in his complaint,'" *Jemaneh v. Univ. of Wyo.*, 82 F. Supp. 3d 1281, 1299 (D. Colo.) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)), *aff'd*, 622 F. App'x 765 (10th Cir. 2015), *and cert. denied*, 136 S. Ct. 2419 (June 6, 2016).

on Rule 12(b)(6) motions to dismiss." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). These sources include: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity; . . . (3) matters of which a court may take judicial notice"; and (4) in limited circumstances, documents within a special report filed pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citations and internal quotation marks omitted).

Plaintiff's response to Defendants' Motion to Dismiss contains factual allegations and legal theories, as well as evidentiary material, that were not presented in his pleading. *See, e.g.*, Pl.'s Resp. Br. (Doc. No. 47) at 7-8, 10 (describing the substance of Plaintiff's conversations with Defendant Troutt and alleging for the first time that Defendant Troutt substituted regular-strength ibuprofen for prescription-strength Neurontin), 11-12 (alleging for the first time that Defendant Grogan "failed to accommodate [Plaintiff's] disability"), 15 (arguing for the first time that an Oklahoma statute and administrative policy "create a protected liberty interest in the prison grievance procedure"); Pl.'s Resp. Br. Exs. 1-18 (Doc. Nos. 47-1 to 47-18) (exhibits not referenced in the Complaint). Neither party has asked the Court to treat Defendants' Rule 12(b)(6) motion as one for summary judgment under Federal Rule of Civil Procedure 56. *See* Pl.'s Resp. Br. at 1; Defs.' Resp. Br. (Doc. No. 52) at 3-4. Accordingly, the undersigned declines to convert Defendants' Motion to a request for summary judgment and has not considered Plaintiff's newly presented evidentiary material (Doc. Nos. 47-1 to 47-18) in evaluating the

sufficiency of Plaintiff's Complaint. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 131 (10th Cir. 1998).

The undersigned has considered, however, the additional well-pled allegations in Plaintiff's Response Brief that are consistent with the facts and theories asserted in his Complaint. *See Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001); *Barnes v. City of Okla. City ex rel. Okla. City Police Dep't*, No. CIV-10-1338-D, 2011 WL 5326251, at *4 (W.D. Okla. Nov. 3, 2011) ("[T]he Court, in its discretion, may consider additional factual allegations offered in Plaintiffs' response brief 'if they are consistent with the facts and theories advanced in the complaint,' regardless of whether Plaintiffs have requested leave to amend or offered an amended pleading." (alteration omitted) (quoting *Hayes*, 264 F.3d at 1025)); *Andrews v. Andrews*, No. CIV-05-110-HE, 2006 WL 771578, at *1 n.3 (W.D. Okla. Mar. 27, 2006) ("Additional allegations contained in the plaintiffs' briefs, to the extent they consist of well-pleaded facts that are 'consistent with the facts and theories advanced in the complaint,' have been considered in determining the sufficiency of the plaintiffs' federal claim." (quoting *Hayes*, 264 F.3d at 1025)).

### B.    *Plaintiff's Allegations and Relief Sought*

Plaintiff's claims primarily stem from Defendants' alleged failure to properly treat his multiple sclerosis ("MS"), constipation, and seasonal allergies while Plaintiff was incarcerated at James Crabtree Correctional Center ("JCCC"), an ODOC facility, between August 2014 and June 2015. *See* Compl. at 3, 5-9, 16-21. Plaintiff names as Defendants ODOC and three of its current or former employees: Dr. Jeffery Troutt,

Plaintiff's treating physician at JCCC; Tami Grogan, JCCC's Health Services Administrator; and Genese McCoy, ODOC's Medical Service Administrator. *Id.* at 1-2.

Plaintiff alleges that he was diagnosed with MS when he was thirty-three years old. *Id.* at 4. Plaintiff—explaining that MS "is a chronic degenerative disease of the central nervous system, in which the gradual destruction of myelin in patches throughout the brain or spinal cord or both, interferes with the nerve pathways and causes muscular weakness, loss of coordination, and speech and visual disturbances"—states that "[o]ver the years, [he] has experienced reduced feeling in his hands and feet, coordination problems, muscle spasms, and considerable tingling in his feet." *Id.* at 4, 5. Plaintiff had at least one MRI and one consultation with a neurologist before he was incarcerated in January 2012. *See id.* at 5.

Plaintiff was previously incarcerated at a different ODOC facility, Joseph Harp Correctional Center ("JHCC") in Lexington, Oklahoma. *Id.* "Prison doctors there provided him with Copaxone, which is a MS maintenance medication, but not a pain reliever." *Id.* (alleging that a neurologist "prescribed Copaxone for maintenance of [Plaintiff's] MS" in November 2012). These doctors also prescribed Flonase to treat Plaintiff's seasonal allergies and Metamucil to "offset the side effects of Copaxone." *See id.*

Plaintiff was transferred from JHCC to JCCC in August 2014. He alleges that Defendant Troutt, who was "the only person [at JCCC] who c[ould] prescribe, change, or discontinue inmates' medications," "refused" to refill Plaintiff's Flonase and Metamucil and "gave no reason for discontinuing these medications." *See id.* at 6, 7, 18; *accord*

Pl.'s Resp. Br. at 8 ("Dr. Troutt arbitrarily discontinued Flonase, without any discussion or explanation, and without providing any alternative sinus medication."). Defendant Troutt eventually gave Plaintiff a medication "similar" to Flonase to treat the "serious respiratory and sinus problems" that Plaintiff suffers during allergy season. Compl. at 5, 7.

In January 2015, Defendant Troutt sent Plaintiff to the University of Oklahoma Medical Center ("OUMC") for follow-up "MRIs and exams by a specialist neurologist." *Id.* at 6; *see also* Compl Ex. 1 (Doc. No. 1-1) at 2-4 (OUMC neurology clinic record dated January 7, 2015). The neurologists instructed Plaintiff to continue Copaxone injections and prescribed 300 mg gabapentin once daily "for neuropathic pain/paresthesias" and 100 mg docusate twice daily for constipation.[3] *See id.* at 6, 8; Compl. Ex. 1, at 2-4. But, says Plaintiff, Defendant Troutt "refused to provide" Neurontin and Metamucil when Plaintiff returned to JCCC. Compl. at 8.

Plaintiff alleges that Defendant Troutt never provided "any medical reason" for not implementing the neurologists' recommendations. *Id.* at 7; *accord* Pl.'s Resp. Br. at 9 ("Dr. Troutt did not say that he disagreed with their recommendations. Dr. Troutt did not provide any medical reason for his decision."). Plaintiff states that Defendant Troutt initially told Plaintiff "that Neurontin is not in our formulary," but that Defendant Troutt prescribes Plaintiff "Copaxone, which is not in the JCCC formulary" and "other JCCC

---

[3] Plaintiff typically refers to gabapentin as "Neurontin," one of the generic drug's well-known brand names. *See, e.g.*, Compl. at 6, 7, 8; Pl.'s Resp. Br. at 3. He generically refers to both Metamucil, which is a bulking agent, and docusate, which is a stool softener, as "Metamucil" or simply "a laxative." *See, e.g.*, Compl. at 6, 8, 18; Pl.'s Resp. Br. at 7.

inmates . . . are being provided with Neurontin." Compl. at 6. As to the neurologists' recommendation that Plaintiff take a twice-daily stool softener (docusate) for constipation, Plaintiff alleges that Defendant Troutt provided no explanation for refusing to follow that recommendation. *See* Pl.'s Resp. Br. at 7-9.

Plaintiff alleges that Defendant Troutt was "well aware of Plaintiff's pain, suffering, and extreme concern about his future with multiple sclerosis" "[d]ue to conversations with" Plaintiff and because Defendant Troutt had Plaintiff's "medical records and the results of [his] examination by . . . neurologists at OUMC." Compl. at 19; *see also* Pl.'s Resp. Br. at 7 ("[Plaintiff] repeatedly told Dr. Troutt that he was severely constipated and had considerable abdominal pain as a result."), 8 ("[Plaintiff] repeatedly told Dr. Troutt he was in considerable pain due to his degenerative multiple sclerosis and needed effective pain medication. Dr. Troutt has [Plaintiff's] medical records, including multiple MRI test reports."). Nonetheless, Defendant Troutt has refused, "without providing any medical rationale," "to follow the specialists' instructions and prescriptions," or to provide "any other effective medication" to treat Plaintiff's "extreme discomfort/pain." Compl. at 9. Defendant Troutt only gave Plaintiff "normal strength ibuprofen as an alternative to Neurontin," Pl.'s Resp. Br. at 7, even though Plaintiff "told him this was ineffective for his type and degree of pain," *id.* at 8, 10. Defendant Troutt still refuses to give Plaintiff "Metamucil or some alternative laxative" to relieve Plaintiff's "severe[] constipat[ion]" and abdominal pain. *Id.* at 7. Plaintiff asserts that Defendant Troutt's "deliberate indifference" to Plaintiff's medical needs entitles him to damages under both 42 U.S.C. § 1983 and Oklahoma tort law. *See*

*generally* Compl. at 3-10, 18-19 (§ 1983), 16 (alleging intentional infliction of emotional distress).

Plaintiff alleges that Defendant Grogan, who is "Dr. Troutt's administrative supervisor, . . . is aware of Plaintiff's complaints due to his grievances [but] she has refused to investigate or take corrective action." Compl. at 7. Defendant McCoy was "likewise calloused and indifferent" to Plaintiff's medical needs because she rejected two of Plaintiff's grievances or appeals as untimely filed even though Defendant Grogan had responded to the grievances on their merits. *Id.* at 15; *see also id.* at 20 ("Defendant McCoy wrongly denied relief regarding Plaintiff's grievance appeals to her."). Plaintiff believes that Defendant Grogan and Defendant McCoy "tacitly condon[ed]" Defendant Troutt's misconduct by denying his grievances. *Id.* at 3; *accord* Pl.'s Resp. Br. at 4 ("Defendants Grogan and McCoy . . . personally participate[d] in condoning [Defendant] Troutt's conduct by denying [Plaintiff's] grievances."). Plaintiff asserts that Defendant Grogan's and Defendant McCoy's conduct entitles him to relief under 42 U.S.C. § 1983, Oklahoma tort law, and an Oklahoma statute that purportedly guarantees prisoners a "right to a fair and adequate grievance process." *See generally* Compl. at 3-10, 19-21 (§ 1983), 11-15, 19-21 (Okla. Stat. tit. 57, § 566.3(G)), 16.

Plaintiff seeks compensatory and punitive damages against Defendants Troutt, Grogan, and McCoy in their official and individual capacities under 42 U.S.C. § 1983 and Oklahoma law. *See* Compl. at 2, 16, 23. He also seeks unspecified "prospective injunctive relief" against Defendant ODOC under Title II of the ADA. *Id* at 2; *see also id.* at 23; Pl.'s Resp. Br. at 5.

C. Analysis

As detailed, Plaintiff is suing Defendants Troutt, Grogan, and McCoy for damages in their official and individual capacities for violating his Eighth Amendment right to adequate medical care while incarcerated and intentionally causing Plaintiff to suffer emotional distress. He is also suing Defendants Grogan and McCoy for damages in their official and individual capacities for violating Plaintiff's state-law "right to a fair and adequate grievance process." *See* Compl. at 2, 23. Plaintiff is suing Defendant ODOC in its "official capacity" seeking unspecified "prospective injunctive relief" for violating Title II of the ADA. *See id.* at 2, 17-18. These claims are discussed in turn.

1. Section 1983 Official-Capacity Claims for Damages Against Defendants Troutt, Grogan, and McCoy

Defendants argue that "the Eleventh Amendment bars Plaintiff's claim[s] against Defendants [Troutt, Grogan, and McCoy] in their official capacities for money damages" because these Defendants are sued "as employees of ODOC." Defs.' Mot. to Dismiss at 4. The Eleventh Amendment ordinarily grants "the States and their agencies" sovereign immunity from all suits brought in federal court by private citizens. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The State's immunity from suit also extends to state officials sued in their official capacities, as such suits merely represent "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978); *accord Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in

their official capacity therefore should be treated as suits against the State.").  There are three exceptions to this rule:

> First, a state may consent to suit in federal court.  Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment.  Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citations omitted).  "[O]nce effectively asserted [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction," *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted), which the court is "obligated to resolve" as a threshold matter for any covered claim, *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008).  *Accord Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998); *U.S. ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1176 (10th Cir. 2007).

As Defendants point out, the Eleventh Amendment bars all of Plaintiff's § 1983 official-capacity claims for damages because "Oklahoma has not consented to be sued in federal court" and Congress did not abrogate state sovereign immunity by creating a private right of action under 42 U.S.C. § 1983.  *Berry v. Oklahoma*, 495 F. App'x 920, 921-22 (10th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979); *see also Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) ("Because the defendants are employees of the Oklahoma Department of Corrections . . . , the Eleventh Amendment applies to the

official-capacity claims for damages."). Accordingly, the Court should GRANT Defendants' Motion to Dismiss Plaintiff's § 1983 claims for damages against Defendants Troutt, Grogan, and McCoy in their official capacities and dismiss these claims without prejudice. *See Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988).

2. <u>Section 1983 Individual-Capacity Claims for Damages Against Defendants Troutt, Grogan, and McCoy</u>

A plaintiff seeking to hold a state-actor defendant personally liable under § 1983 must ultimately prove that the defendant, "through [his or her] own individual actions, has violated" a right secured to the plaintiff by the Constitution and laws of the United States. *Iqbal*, 556 U.S. at 676; *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). At the pleading stage, this requires the plaintiff to allege facts supporting a reasonable inference that the individual defendant was personally involved in the conduct complained of and acted with the state of mind required to violate the federal right in question. *See Iqbal*, 556 U.S. at 678; *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).

Plaintiff alleges that Defendant Troutt's "refus[al] to follow the specialist's instructions" for treating Plaintiff's neuropathic pain and constipation, as well as Defendant Troutt's months-long delay in replacing Plaintiff's allergy medication, violated Plaintiff's Eighth Amendment right to adequate medical care while incarcerated. *See* Compl. at 3, 5-6, 8-9, 18-19; Pl.'s Resp. Br. at 7-9. He also alleges that Defendant Grogan and Defendant McCoy "personally participate[d] in condoning [Defendant]

Troutt's conduct by denying [Plaintiff's] grievances" and grievance appeals. Pl.'s Resp. Br. at 4; *see also* Compl. at 7, 15.

Defendants Troutt, Grogan, and McCoy assert that they are entitled to qualified immunity on these claims because Plaintiff does not allege any facts showing that "these Defendants violated any constitutional rights, let alone a clearly established right based on facts comparable to the facts here." Defs.' Mot. to Dismiss at 10. The doctrine of qualified immunity protects individual government officials from civil lawsuits "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged," accepted as true and viewed in the plaintiff's favor, "make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown*, 662 F.3d at 1164 (internal quotation marks omitted); *see also Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("This court uses the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally."); *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) ("Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment."). The district court may "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

*a. Deliberate Indifference to Plaintiff's Serious Medical Needs*

The Eighth Amendment imposes on states an "obligation to provide medical care for those whom [they are] punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also West v. Atkins*, 487 U.S. 42, 56 (1988). However, "society does not expect that prisoners will have unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A violation of the Eighth Amendment will be found only if the prisoner shows that he or she suffered "acts or omissions sufficiently harmful to evidence deliberate indifference to [the prisoner's] serious medical needs." *Gamble*, 429 U.S. at 106.

The Tenth Circuit

> recognize[s] two types of conduct [that] may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition.

*Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). "The test for constitutional liability" in either case "involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). The objective component is met if "the deprivation at issue was . . . 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted). The subjective component is met if the defendant "acted or failed to act despite his knowledge" that the circumstances posed

"a substantial risk of serious harm" to the plaintiff's health or safety. *Farmer*, 511 U.S. at 843. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," *id.* at 842, and does not demand proof that the defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," *id.* at 835.

### b. Defendant Troutt

Plaintiff alleges that Defendant Troutt was deliberately indifferent to Plaintiff's serious medical needs in refusing, "without providing any medical rationale," to follow the OUMC neurologists' instructions that Plaintiff start taking Neurontin to treat his neuropathic pain and docusate to relieve his constipation. *See* Compl. at 5-6, 9, 18-19; Pl.'s Resp. Br. at 7-9; Compl. Ex. 1, at 2, 4. Plaintiff also alleges that Defendant Troutt "discontinu[ed]" Plaintiff's Metamucil in August 2014, and then "refused to provide" "docusate (Metamucil)," or *any* laxative, even though Defendant Troutt knew in January 2015 that the OUMC neurologists had prescribed twice-daily docusate "for constipation" and Plaintiff "repeatedly told Dr. Troutt he was severely constipated and had considerable abdominal pain as a result." *See* Compl. at 5-6, 8; Pl.'s Resp. Br. at 7, 9.

In Defendants' Motion, Defendant Troutt asserts that he is entitled to qualified immunity because a "medical difference of opinion" or a "disagreement between experts" cannot support a deliberate-indifference claim so long as the "doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition." *See* Defs.' Mot. to Dismiss at 8-9 (internal quotation marks omitted).

Alternatively, Defendant Troutt asserts that it was "not clearly established" in 2015 that a prison physician, by sending his patient "to a specialist, was then obligated to implement each of the specialist's recommendations." *Id.* at 10.

i. Neuropathic Pain

To Defendant Troutt, this lawsuit involves nothing more than "a disagreement between medical professionals concerning treatment" because Plaintiff's own allegations establish that his "treatments have not been halted" and he has "received medication and evaluations for his condition consistently since his arrival at JCCC." *See id.* Thus, "[t]he fact that Plaintiff wanted or believed he needed a different course of treatment does not indicate [that] a clearly established right was violated." *Id.* In his response brief, Plaintiff acknowledges that Defendant Troutt gave him "normal strength ibuprofen *as an alternative* to Neurontin," Pl.'s Resp. Br. at 7 (emphasis added), and that Plaintiff is claiming that Neurontin is "the correct," "more powerful" medication to manage his nerve pain, *id.* at 10, 14. *See also* Compl. at 9 ("Plaintiff alleges that Neurontin (gabapentin) is necessary to relieve his extreme discomfort/pain. Defendant Troutt has refused to provide [Plaintiff] with Neurontin (gabapentin) *or any other effective* medication, without providing any medical rationale." (emphasis added)).

As articulated by the Tenth Circuit in a similar (but unpublished) case involving Defendant Troutt, the proper inquiry on this aspect of Plaintiff's § 1983 claim is "whether it was clearly established that Dr. Troutt's conduct—prescribing a medication that was different than the medication prescribed by consulting physicians—was deliberately indifferent to [Plaintiff's] medical needs." *Toler v. Troutt*, 631 F. App'x 545, 547 (10th

Cir. 2015). The *Toler* court concluded that it was not: "Not only was this not clearly established, but the law was clearly established to the contrary." *See id.* (discussing the clearly established law in 2013-2014).

Plaintiff's allegations focus on the neurologists' prescription as establishing Neurontin as "the correct" or "necessary" medication to relieve Plaintiff's neuropathic pain. *See* Pl.'s Resp. Br. at 14; Compl. at 9. But, even viewed in his favor, the facts alleged in Plaintiff's complaint and elaborated on in his response brief show that Defendant Troutt "recognized [Plaintiff's] serious medical condition and [was] treating it" with pain medication. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999); *see* Compl. at 9; Pl.'s Resp. Br. at 7. "A difference of opinion with medical staff about treatment is not actionable under the Eighth Amendment[;] nor is a disagreement among medical experts." *Toler*, 631 F. App'x at 547.

Plaintiff's allegations regarding the difference in efficacy between the prescribed and the provided pain medication do not show more than mere "dissatisfaction with the treatment provided" and therefore do not plausibly establish that this difference alone amounts to an Eighth Amendment violation. *See Archer v. Simmons*, 128 F. App'x 716, 718-19 (10th Cir. 2005) (plaintiff's allegation that medical staff substituted less-effective medications for his "prescribed medicine" failed to state a deliberate-indifference claim); *Todd v. Bigelow*, 497 F. App'x 839, 842 (10th Cir. 2012) ("[The plaintiff] asserts that Elavil—the alternative medication he eventually accepted—had detrimental side effects and was not as effective as Neurontin. But a difference of opinion with the medical staff as to the optimal pain-management regimen does not amount to deliberate indifference."

(citing *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002)); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, . . . [is] insufficient to establish a constitutional violation."). Accordingly, the Court should GRANT Defendants' Motion to Dismiss this aspect of Plaintiff's § 1983 claim against Defendant Troutt.

### ii. Constipation and Abdominal Pain

As discussed, Defendant Troutt asserts that he is protected by qualified immunity because "[t]he fact that Plaintiff wanted or believed he needed a *different* course of treatment does not indicate [that] a clearly established right was violated." Defs.' Mot. to Dismiss at 10 (emphasis added). That argument carries the day on Plaintiff's pain-medication claim, as explained above. But it does not address Plaintiff's well-pled allegations that Defendant Troutt "refused to provide" *any* laxative or stool softener despite knowing that constipation was a side effect of Plaintiff's MS medication, the OUMC neurologists had prescribed docusate to be taken two times per day, and Plaintiff had repeatedly complained of severe constipation and abdominal pain. *See* Compl. at 5-6, 8; Pl.'s Resp. Br. at 7, 9.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations and internal quotation marks omitted). "[T]he right allegedly violated must be established, not as a broad general

proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012) (citations and internal quotation marks omitted). "The plaintiff is not required to show, however, that the very act in question previously was held unlawful . . . to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (internal quotation marks omitted); *accord Hope v. Pelzer*, 536 U.S. 730, 740 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."). Rather, the proper inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (internal quotation marks omitted).

To this end, the parties cite facially differing principles, each of which is supported by law. Defendants assert that "[i]t is not clearly established that Defendant Trout[t], by sending Plaintiff to a specialist, was then obligated to implement each of the specialist's recommendations." Defs.' Mot. to Dismiss at 10. Plaintiff responds that Defendant Troutt violated clearly established law "by repeatedly providing a course of treatment"—or, more accurately, inexplicably refusing to provide a course of treatment— "that he knows is patently unreasonable given [Plaintiff's] symptoms, his medical records, and the prescriptions of the specialist doctors to whom Dr. Troutt had sent [Plaintiff] to for his examination." *See* Pl.'s Resp. Br. at 8-9.

These principles are not difficult to reconcile. It is beyond dispute that "'[a] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment.'" *Callahan v. Poppell*, 471

F.3d 1155, 1160 (10th Cir. 2006) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)). But it is also clearly established in this circuit that a prison doctor's "intentional interference with prescribed treatment may constitute deliberate indifference," *Ledoux*, 961 F.2d at 1537 (citing *Gamble*, 429 U.S. at 104-05), particularly where the doctor entirely denies medical treatment "consistent with the symptoms presented by the inmate," *Self*, 439 F.3d at 1233.

In this case, accepting Plaintiff's well-pled allegations as true, Defendant Troutt confronted an inmate who he knew had been diagnosed with both multiple sclerosis and constipation and who "repeatedly" told the physician that "he was severely constipated and had considerable abdominal pain as a result." *See* Pl.'s Resp. Br. at 7; Compl. at 18-19. Defendant Troutt also knew that physicians at JHCC had given Plaintiff Metamucil before Defendant Troutt "discontinu[ed]" that medication in August 2014, and that the OUMC neurologists had instructed Plaintiff in January 2015 to start taking 100 mg of docusate twice a day "for constipation." *See* Compl. at 5-6, 18-19; Compl. Ex. 1, at 2, 4. Nonetheless, says Plaintiff, Defendant Troutt consistently "refused," without any apparent explanation, to give Plaintiff "Metamucil or some alternative laxative" to treat his reported symptoms. *See* Pl.'s Resp. Br. at 7, 9, 14-15.

While a prison doctor's failure to adhere to another physician's diagnosis and prescribed course of treatment does not itself violate the Eighth Amendment, the doctor's knowledge that other physicians had diagnosed an underlying medical condition and prescribed a specific course of treatment evidences the validity of the patient's complaints and strongly suggests the need for *some* action when the prisoner presents

with recognizable symptoms of that condition. In 2015, any reasonable prison doctor in this circuit would have known that he could not simply ignore Plaintiff's repeated complaints of severe, persistent constipation and abdominal pain, particularly when those complaints were supported by a specialist's recommendations. *Cf. Al-Turki v. Robinson*, 762 F.3d 1188, 1195 (10th Cir. 2014) ("[The prison nurse] violated clearly established law by choosing to ignore Plaintiff's repeated complaints of severe abdominal pain and requests for medical assistance, thus completely denying him any medical care 'although presented with recognizable symptoms which potentially create[d] a medical emergency.'" (alteration in original) (quoting *Self*, 439 F.3d at 1232)); *Rutherford v. Med. Dep't of Dep't of Corr.*, 76 F. App'x 893, 901-02 (10th Cir. 2003) (plaintiff's allegations that prison medical staff members "ignor[ed] his neurosurgeon's orders for an extra mattress" and "refused to comply with orders prescribing an extra mattress" stated a deliberate-indifference claim against the staff members); *Hunt v. Uphoff*, 199 F.3d 1220, 1223-24 (10th Cir. 1999) (plaintiff's allegations that "he was denied insulin by a doctor even though it had been earlier prescribed to him by another prison doctor," that "certain medically-recommended procedures were not performed," that "special diets prescribed for him were not provided," and that "he was not treated for elevated blood sugar (caused by the diabetes) or his chronic hypertension" stated a deliberate-indifference claim); *Self*, 439 F.3d at 1232-33 ("[W]here a doctor *orders treatment consistent with the symptoms presented* and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." (emphasis added)).

Plaintiff plausibly alleges that his constipation was objectively "sufficiently serious" because it had "been diagnosed by a physician as mandating treatment," caused him severe pain, and—as a known side effect of his MS medication—occurred consistently and not as an isolated incident. *Mata*, 427 F.3d at 751; *see, e.g.*, Compl. at 5-6, 8; Compl. Ex. 1, at 2, 4; Pl.'s Resp. Br. at 7, 9. His allegations also plausibly support a finding that Defendant Troutt did not "merely exercise[] his considered medical judgment," *Self*, 439 F.3d at 1232, when he refused to provide "Metamucil or some alternative laxative," *see* Pl.'s Resp. Br. at 7, 9, 14. Defendant Troutt's knowledge of both Plaintiff's medical condition and the other physicians' prescribed treatment, coupled with Defendant Troutt's unexplained refusal to give Plaintiff any laxative despite Plaintiff's repeated complaints of severe constipation and abdominal pain, give rise to a reasonable inference that Defendant Troutt "know[ingly] or reckless[ly]" failed to "provide[] a level of care consistent with the symptoms" that Plaintiff presented to him. *Self*, 439 F.3d at 1233; *see Martinez v. Garden*, 430 F.3d 1302, 1305 (10th Cir. 2005) ("[T]he complaint can be read to allege that defendants knew of [plaintiff's] serious medical condition, and despite this knowledge, failed to ensure that he received treatment. Knowledge of his medical condition, coupled with the alleged failure to inform him of medical appointments or to arrange transportation, may give rise to an inference that defendants acted with deliberate indifference."). Accordingly, Defendant Troutt is not entitled to qualified immunity for this alleged misconduct and the Court should DENY Defendants' request to dismiss this aspect of Plaintiff's § 1983 claim against Defendant Troutt.

### iii.    Seasonal Allergies

Finally, Plaintiff alleges that Defendant Troutt was deliberately indifferent to his "serious respiratory and sinus problems" because Defendant Troutt "arbitrarily discontinued" Plaintiff's Flonase prescription after he arrived at JCCC in August 2014 and "refused to provide any similar medication for several months." *See* Compl. at 7; Pl.'s Resp. Br. at 8.   "Where a prisoner claims that harm was caused by a delay in medical treatment, he must show that the delay resulted in substantial harm in order to satisfy the objective prong of the deliberate indifference test." *Al-Turki*, 762 F.3d at 1193 (internal quotation marks omitted); *see also Oxendine v. Kaplan*, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (noting that a delay in addressing an objectively "serious" medical need violates the Eighth Amendment only "where the plaintiff can show that the delay resulted in substantial harm" (internal quotation marks omitted)).   "[T]he substantial harm caused by a delay in treatment may be a permanent physical injury, or it may be an immediate injury, such as the pain experienced while waiting for treatment and analgesics." *Al-Turki*, 762 F.3d at 1193 (internal quotation marks omitted).

The few well-pled facts underlying this aspect of Plaintiff's § 1983 claim support a reasonable inference that Flonase improves Plaintiff's quality of life "especially in allergy season," Compl. at 5, and that, on at least one occasion, Plaintiff had trouble breathing "when he tried to exercise . . . without any sinus medication." *See* Pl.'s Resp. Br. at 8.   But Plaintiff does not present any facts supporting a reasonable inference that Defendant Troutt's delay in replacing Plaintiff's allergy medicine "resulted in *substantial harm*" to Plaintiff's health or safety.   *Al-Turki*, 762 F.3d at 1193 (emphasis added).

Although Plaintiff asserts that he experienced "considerable ongoing pain and suffering" during this delay, Pl.'s Resp. Br. at 8, that conclusory allegation is not enough for Plaintiff to satisfy the deliberate-indifference test's objective component. *See Al-Turki*, 762 F.3d at 1193; *cf. Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Accordingly, the Court should GRANT Defendants' motion to dismiss this aspect of Plaintiff's § 1983 claim against Defendant Troutt.

### c. *Defendants Grogan and McCoy*

Plaintiff alleges that Defendants Grogan (JCCC's Health Services Administrator) and McCoy (ODOC's Medical Service Administrator) were deliberately indifferent to Plaintiff's serious medical needs because they "refused to investigate or take corrective action" when Plaintiff complained about Defendant Troutt's "refusal to prescribe Neurontin (gabapentin), despite the fact that a medical specialist . . . had prescribed it," and told them that "Neurontin (gabapentin) is critical to relieving Plaintiff's pain and suffering." Compl. at 7, 15; *see also* Pl.'s Resp. Br. at 4 (clarifying that the Complaint includes a "claim of supervisory liability" and alleging that Defendants Grogan and McCoy "personally participate[d] in condoning [Defendant] Troutt's conduct by denying [Plaintiff's] grievances"). Defendants Grogan and McCoy assert that they are entitled to qualified immunity because the facts alleged in Plaintiff's Complaint do not establish "an

24

affirmative link between [these] Defendants and any possible constitutional violation." *See* Defs.' Mot. to Dismiss at 5-6, 10.

A defendant sued in his or her individual capacity under § 1983 "may be subject to personal liability and/or supervisory liability." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (internal quotation marks omitted). Because § 1983 does not "authorize liability under a theory of respondeat superior," however, a plaintiff "must show an affirmative link between the supervisor and the constitutional violation" in order to recover against the supervisor personally. *Id.* (internal quotation marks omitted). Establishing this "affirmative link" "requires more than a supervisor's mere knowledge of his subordinate's conduct. Rather, a plaintiff must satisfy three elements to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind." *Id.* (citation, omission, and internal quotation marks omitted). The third element requires a plaintiff to show that the supervisor-defendant acted or failed to act with the same state of mind as required for "the subordinates to commit the underlying constitutional violation." *See id.* In this case, the required state of mind is deliberate indifference to Plaintiff's serious medical needs—i.e., actual knowledge that the alleged conduct posed a substantial risk of serious harm to Plaintiff's health or safety. *See Shepard v. Sullivan*, 65 F. App'x 677, 679-80 (10th Cir. 2003).

Plaintiff's only well-pled factual allegations against Defendant Grogan and Defendant McCoy concern their adverse responses to two grievances that Plaintiff filed alerting the administrators to Plaintiff's "complaints" about Defendant Troutt's "refusal

to prescribe Neurontin (gabapentin), despite that fact that a medical specialist (neurologist) had prescribed it and [that] Neurontin (gabapentin) is critical to relieving Plaintiff's pain and suffering." *See* Compl. at 3, 7, 15, 19-21; Pl.'s Resp. Br. at 4. Plaintiff asserts that these grievances were related to his "central claim against Dr. Troutt" for refusing to prescribe Neurontin, Compl. at 15, and that Defendants "Grogan and McCoy's denial of [Plaintiff's] grievances effectively prevented him from receiving medical care," Pl.'s Resp. Br. at 5. But Plaintiff does not allege that, separately from stating that neurologists had prescribed Neurontin, these grievances informed Defendant Grogan and Defendant McCoy that Plaintiff's neuropathic or abdominal pain was so severe as to require immediate action. Nor can such knowledge be plausibly attributed to these Defendants merely from the receipt of the two grievances that Plaintiff describes in his Complaint.

"[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by [P]laintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Plaintiff does not allege any facts supporting a reasonable inference that either Defendant Grogan or Defendant McCoy intentionally interfered with Plaintiff's medical treatment knowing that her conduct posed a substantial risk of serious harm to Plaintiff's health or safety, as is required to state an Eighth Amendment claim against a prison official "who serves solely as a gatekeeper for other medical personnel capable of treating [the prisoner's] condition," *Self*, 439 F.3d at 1232 (omission and internal quotation marks omitted).

Accordingly, the Court should GRANT Defendants' motion to dismiss Plaintiff's § 1983 claims against these Defendants. *See Gallagher*, 587 F.3d at 1069.

### 3. ADA Official-Capacity Claim Against Defendant ODOC

Plaintiff asserts that Defendant ODOC "is sued in its official capacity" under Title II of the ADA "and due to Plaintiff's claim for prospective injunctive relief." Compl. at 2; *accord* Pl.'s Resp. Br. at 3-4. As with Plaintiff's official-capacity claims for damages under § 1983, his ADA claim against ODOC is "barred by the Eleventh Amendment absent a valid exception." *Hughes v. Colo. Dep't of Corr.*, 594 F. Supp. 2d 1226, 1234 (D. Colo. 2009). But Defendant ODOC does not assert Eleventh Amendment immunity as a defense to this claim, *see* Defs.' Mot. to Dismiss at 4-5, 13 n.2, and neither party has "raised []or briefed the issue of the validity of Congress's purported abrogation of state sovereign immunity in the ADA as to the conduct at issue in this case," *Hughes*, 594 F. Supp. 2d at 1234 (citing 42 U.S.C. § 12202).[4] Accordingly, the undersigned considers only whether the facts alleged in Plaintiff's Complaint and response brief state a claim for relief under Title II of the ADA against ODOC for its treatment of Plaintiff's multiple

---

[4] To "address[] the validity of Congress's abrogation of state sovereign immunity via Title II of the ADA" and thereby "reach the question of the extent of the State defendants' constitutional immunity," the Court "must determine 'on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Hughes*, 594 F. Supp. 2d at 1234 n.1 (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)); *see also Levy v. Kan. Dep't of Social & Rehab. Servs.*, 789 F.3d 1164, 1169 (10th Cir. 2015).

sclerosis before he filed this lawsuit. *See Hughes*, 594 F. Supp. 2d at 1234 (citing *Orenduff*, 548 F.3d at 941-42); 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2012); *see also id.* §§ 12131, 12133-12134. To state a plausible claim under Title II, a plaintiff must allege facts supporting a reasonable inference that he or she "(1) is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

Plaintiff's pleading offers little more than "a formulaic recitation of the elements of a cause of action" under Title II. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted); *see* Compl. at 17-18. The few well-pled facts alleged by Plaintiff are that he has a physical impairment (MS) that limits his ability to walk and sleep, ODOC "denied [him] the benefits of the services" offered by JCCC's "health services department," and "other JCCC inmates are provided with Neurontin" but Plaintiff is not. Compl. at 4-5, 7, 18, 21; *see* 42 U.S.C. §§ 12102, 12132. Notably, Plaintiff explicitly denies that he has been "excluded from" or "denied the benefits of" healthcare services generally—or even medical treatment and monitoring specific to his MS and its neuropathic symptoms—

while incarcerated at JCCC. Compl. at 6, 18; Pl.'s Resp. Br. at 7; *see* Defs.' Mot. to Dismiss at 13 n.2.

Plaintiff's allegations do not plausibly show that he was "otherwise qualified for the benefits he sought" or denied those benefits "solely by reason of disability." *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (citation omitted) (holding that plaintiff's disagreement with prison doctor's recommended courses of treatment could not support ADA claim). Plaintiff's allegation of MS and its limiting effects on a major life activity may be sufficient to plead a disability, *see Hughes*, 594 F. Supp. 2d at 1240; 42 U.S.C. § 12102, but he does not suggest or allege facts to reasonably support that he was denied medical care for which he otherwise qualified *because of* this disability, *see Fitzgerald*, 403 F.3d at 1144. *See, e.g.*, Compl. at 6, 8, 9 (alleging that Defendant Troutt refused to prescribe Neurontin for financial reasons).

As detailed above, Plaintiff acknowledges that he was seen and treated by Defendant Troutt and other medical personnel at JCCC but takes issue, primarily, with the substitution of one type of pain relief medication for another less-effective medication. *See supra* Part I.B; Compl. at 18 ("While Plaintiff . . . is not wholly precluded from participating in the prison's health services, his risk of incurring serious deprivation constitutes discrimination because other JCCC inmates are provided with Neurontin . . . ."). Plaintiff's allegations concerning his treatment for MS fall within the category of claims "alleg[ing] that the medical treatment that a plaintiff received or had access to was inadequate," and not that of "claims alleging that a plaintiff was discriminatorily precluded from access to medical treatment altogether." *See Hughes*,

594 F. Supp. 2d at 1241. Such allegations may permit a § 1983 claim for denial of medical treatment, as is indicated in one respect here, but do not state an actionable ADA claim. *See Fitzgerald*, 403 F.3d at 1144.

Accordingly, Plaintiff's sole claim against Defendant ODOC should be dismissed for failure to state a claim upon which relief can be granted, and Defendant ODOC is entitled to dismissal from this lawsuit. *See id.* (citing 42 U.S.C. § 1997e(c)(2)); 28 U.S.C. § 1915A(b)(1).

### 4. State-Law Claims

Plaintiff asks the Court to exercise supplemental jurisdiction to hear two claims alleging that Defendants Troutt, Grogan, and McCoy "intentionally inflicted emotional distress upon Plaintiff" and that Defendants Grogan and McCoy "interfered with and obstructed Plaintiff's state law right to a fair and adequate grievance process." *See* Compl. at 2-3, 11-15, 16 (citing 28 U.S.C. § 1367; Okla. Stat. tit. 57, § 566.3(G)). Defendants in their Motion to Dismiss address Plaintiff's grievance-process claim only. *See* Defs.' Mot. to Dismiss at 13-14. Nevertheless, the undersigned also considers whether Plaintiff's IIED claim can be dismissed on screening under 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1). *Cf. Smith v. Garfield Cnty. Dist. Att'y Office*, No. CIV-15-853-M, 2015 WL 9488175, at *2-3 (W.D. Okla. Nov. 24, 2015) (R. & R.) (recommending that the Court exercise supplemental jurisdiction and dismiss state-law claim with prejudice on screening because defendants were absolutely immune from suit), *adopted*, 2015 WL 9473817, at *1 (W.D. Okla. Dec. 28, 2015).

### a. Access to a Fair and Adequate Grievance Procedure

Defendants argue that § 566.3(G)—while *authorizing* ODOC "'to adopt a grievance procedure at its institutions for receiving and disposing of any and all grievances by prisoners against [ODOC],'" or any ODOC "'officials or employees,'" which arise while a prisoner is within the custody or under the supervision of'" ODOC— "does not create an independent right to that process." Defs.' Mot. to Dismiss at 13 & n.3 (quoting Okla. Stat. tit. 57, § 566.3(G)(1)). The undersigned agrees that this statute does not create a personal right to a "fair and adequate" prison-grievance process or authorize private civil actions for its violation. *See Rachel v. Troutt*, No. CIV-14-655-R, 2015 WL 3408783, at *4 (W.D. Okla. May 27, 2015) (dismissing a similar claim where plaintiff did not "direct the Court to any authority supporting his contention that he has a private right of action under § 566.3 for Defendants' failure to provide him with an adequate grievance procedure"), *rev'd on other grounds*, 820 F.3d 390 (10th Cir. 2016); *see also Hall*, 935 F.2d at 1110 ("The broad reading of the [pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."). Accordingly, the Court should GRANT Defendants' motion to dismiss this claim.

### b. Intentional Infliction of Emotional Distress

Under Oklahoma law, "intentional infliction of emotional distress is an independent tort," *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 916 P.2d 241, 248 (Okla. 1996), for which a plaintiff can recover both compensatory and punitive damages, *see Meyer v. Town of Buffalo*, No. CIV-02-1691-F, 2007 WL 2436302, at *5 (W.D. Okla.

Aug. 22, 2007) (citing *Floyd v. Dodson*, 692 P.2d 77 (Okla. Civ. App. 1984)). This tort is governed by "narrow standards" that permit recovery only for "extreme and outrageous conduct coupled with severe emotional stress." *Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To prevail, a plaintiff must establish that the defendant "intentionally or recklessly" engaged in "extreme and outrageous" conduct that caused the plaintiff to suffer "severe" emotional distress. *Id.*

"The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress" in an effort to "ensure[] that only valid claims reach the jury under the appropriate legal standards." *Id.* Valid IIED claims are those where "the facts before the court" would permit a reasonable jury to find that (1) the "defendant's conduct was so outrageous in character and so extreme in degree" that it went "beyond all possible bounds of decency" and "is regarded as atrocious and utterly intolerable in a civilized community," and (2) the plaintiff's resulting emotional distress "was so severe that no reasonable person could be expected to endure it." *See id.* at 735-36 (alteration and internal quotation marks omitted).

Plaintiff alleges that he has experienced "fear, depression, stress, anxiety, sleep disturbance, headaches, and upset stomach since his arrival at JCCC" because Defendant Troutt has been "deliberate[ly] indifferen[t]" to Plaintiff's medical needs and because Defendant Grogan and Defendant McCoy have "condon[ed]" Defendant Troutt's misconduct by denying administrative grievances. Compl. at 16. These conclusory allegations do not support a reasonable inference that any Defendant's conduct went "beyond all possible bounds of decency" or that Plaintiff's resulting emotional distress

"was so severe that no reasonable person could be expected to endure it." *Computer Publ'ns, Inc.*, 49 P.3d at 735-36 (alteration omitted). Accordingly, the Court should dismiss Plaintiff's IIED claim without prejudice for failure to state a claim upon which relief can be granted under Oklahoma tort law. 28 U.S.C. § 1915A(b)(1); *see also* 42 U.S.C. § 1997e(c)(1).

## II. Plaintiff's Motion for Summary Judgment

Plaintiff has also moved for summary judgment in his favor. *See generally* Pl.'s Mot. Summ. J. (Doc. No. 48) at 1-6. This Motion should be denied.

### A. *Consideration of Materials Belatedly Submitted by Plaintiff*

In late June 2016, Plaintiff filed a "Motion for Leave to File Supplemental Exhibits" in support of his pending and fully-briefed motion for summary judgment. Pl.'s Mot. for Leave (Doc. No. 57) at 1-2; *see also* Pl.'s Mot. Summ. J. (Doc. No. 48) (filed Feb. 26, 2016). Plaintiff seeks to add two new medical records—dated December 4, 2015 and May 25, 2016—to his Rule 56 motion. *See* Pl.'s Mot. for Leave Ex. (Doc. No. 57-1) at 1-7.

Defendants have not responded to Plaintiff's request to add this exhibit to the record. On the other hand, Plaintiff does not explain how the proffered documents might "show[] that there is no genuine dispute as to any material fact and [that Plaintiff] is entitled to judgment as a matter of law" on any claim alleged in his June 2015 Complaint. *See* Fed. R. Civ. P. 56(a), (c)(1), (c)(3); Pl.'s Mot. for Leave.

The undersigned has reviewed the medical records proffered by Plaintiff and finds that these documents, although at least related to the facts supporting Plaintiff's surviving

§ 1983 claim against Defendant Troutt, do not alter the undersigned's analysis and recommendation that Plaintiff's motion for summary judgment be denied. There being no objection, the undersigned recommends that the Court GRANT Plaintiff's "Motion for Leave to File Supplemental Exhibits" (Doc. No. 57) and include the proffered exhibit in the summary-judgment record.

### B. Standard of Review

A motion for summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment has the initial burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c), (e). If the moving party has the ultimate burden of persuasion at trial—e.g., when a plaintiff seeks summary judgment on its claim or a defendant on its affirmative defense—the moving party initially "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2002); *see also Leone v. Owsley*, 810 F.3d 1149, 1153-54 (10th Cir. 2015).

## C. Analysis

Plaintiff's Motion is essentially a thirty-paragraph "statement of material facts to which [Plaintiff] contends no issue of facts exist," along with imprecise citations to entire exhibits, that purportedly "entitl[e] Plaintiff to judgment in his favor as a matter of law." Pl.'s Mot. Summ. J. at 1; *see id.* at 1-5 (citing Compl. Ex. 1; Compl. Ex. 2 (Doc. No. 1-2); Pl.'s Resp. Br. Exs. 1 to 21; Special R. Exs. 2 to 7 (Doc. Nos. 40-2 to 40-7); Special R. Sealed Ex. 10 (Doc. No. 45-2); Pl.'s Summ. J. Aff. (Doc. No. 48-1)). Defendants respond that Plaintiff's "list of facts and conclusory statements" does not "demonstrate how any of the facts establish that he is entitled to judgment as a matter of law." Defs.' Resp. Br. at 4.

Plaintiff's Motion fails to comply with the requirements of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, including that he "identify[] each claim . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). Rather, Plaintiff repeats the allegations made in his Complaint and Rule 12(b)(6) response brief and concludes, without any argument or analysis, that these allegations entitle him to judgment as a matter of law. *See* Pl.'s Mot. Summ. J. at 2-5, 6; Pl.'s Mot. for Leave at 1-2.

As set forth above, the undersigned has found that Plaintiff adequately pleads only a single claim: that Defendant Troutt was deliberately indifferent to Plaintiff's constipation and abdominal pain. To obtain summary judgment in his favor on that claim, Plaintiff must meet the initial burden of "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that "establish, as a matter of law, all essential elements" of the claim. *Pelt*, 539 F.3d at 1280; *see also* LCvR 56.1(d) ("Each individual

statement by the movant . . . shall be followed by citation, with particularity, to any evidentiary material that the party presents in support of its position to Fed. R. Civ. P. 56(c).").  Only at that time would Defendant Troutt "be obligated to bring forward any specific facts alleged to rebut [Plaintiff's] case." *Pelt*, 539 F.3d at 1280.  Ultimately, "the evidence in [Plaintiff's] favor must be so powerful that no reasonable jury would be free to disbelieve it.  Anything less should result in denial of summary judgment." *Leone*, 810 F.3d at 1154 (quoting 11 Daniel R. Coquillette et al., *Moore's Federal Practice* ¶ 56.40[c][1] (3d ed. 2015)).

Plaintiff's submission does not satisfy his initial burden.  Plaintiff's sworn allegations, even if "made on [his] personal knowledge," do not compel the conclusion that Defendant Troutt failed to adequately address Plaintiff's constipation and abdominal pain or otherwise acted with deliberate indifference to those conditions before Plaintiff filed this lawsuit in June 2015.  *See* Fed. R. Civ. P. 56(c)(1), (c)(4); *Leone*, 810 F.3d at 1154.  Indeed, Plaintiff's own assertions suggest action by Dr. Troutt beyond what is alleged in the Complaint.  *See* Pl.'s Mot. Summ. J. at 3 (stating that "[Defendant] Troutt *sometimes* refused to provide Plaintiff with Colace or Metamucil" before June 2015 (emphasis added)); Pl.'s Summ. J. Aff. ¶ 15 (stating that Defendant Troutt provided some "type of laxative" for about five out of the ten months that Plaintiff was incarcerated at JCCC).

"[A]n inference of deliberate indifference is unwarranted under [Tenth Circuit] case law" where, as here, a reasonable jury viewing the facts in Defendant Troutt's favor, could conclude that the "doctor order[ed] treatment consistent with the symptoms

presented and then continue[d] to monitor the patient's condition." *See Self*, 439 F.3d at 1232-33. Accordingly, the undersigned recommends that the Court DENY Plaintiff's Motion for Summary Judgment.

## III. Pending Nondispositive Motion

Finally, Plaintiff filed a motion "requesting that the Court appoint an independent medical doctor who is a specialist in neurology" "to independently establish the required standard of medical care" and to help the Court "determine whether [Defendant Troutt] deviated from" that standard in his treatment of Plaintiff. Pl.'s Mot. (Doc. No. 46) at 1-2. Plaintiff notes that "[a] significant issue in this case is whether Dr. Troutt's course of treatment . . . was appropriate given the . . . symptoms presented and given the specific recommendations of specialists [at OUMC] [to whom] Dr. Troutt had sent Plaintiff . . . for examination and testing on two occasions." *Id.* at 2. The undersigned assumes that Plaintiff is referring to the neurologists' "specific recommendations" that Plaintiff take gabapentin to treat his neuropathic pain and docusate to manage his constipation. *See* Compl. Ex. 1, at 4. Plaintiff asserts that appointing a medical expert witness— specifically, a neurologist—is necessary to "establish the required standard of care" in this case because the record contains "very complex medical testing reports, including MRI test reports, blood test reports, etc." that a "layman cannot be expected to fully comprehend." Pl.'s Mot. at 1, 2.

"On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed" in a particular case and "may appoint any expert that the parties agree on and any of its own choosing." Fed. R. Evid. 706(a). The

"court's authority to appoint an expert under Rule 706 is discretionary" and "will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Cestnick v. Fed. Bureau of Prisons*, 84 F. App'x 51, 53 (10th Cir. 2003) (internal quotation marks omitted). The Tenth Circuit recently noted that "courts rarely exercise the[ir] power" to appoint medical experts. *Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). Indeed, "[s]ome courts treat this power as 'the exception and not the rule,' limiting appointment of experts to the 'truly extraordinary cases where the introduction of outside skills and expertise, not possessed by the judge, will hasten the just adjudication of a dispute without dislodging the delicate balance of the juristic role.'" *Id.* at 397-98 (quoting *Reilly v. United States*, 863 F.2d 149, 156 (1st Cir. 1988)).

The undersigned has recommended that the Court dismiss all of Plaintiff's claims for which a neurologist's professional "skills and expertise" might prove beneficial. *Id.* at 397. If this recommendation is adopted, the only claim remaining in this lawsuit will involve Defendant Troutt's alleged refusal to give Plaintiff "Metamucil or some alternative laxative" to relieve Plaintiff's "severe[] constipat[ion]" and abdominal pain. Pl.'s Resp. Br. at 7. That claim is not so complex that it requires an independent medical expert at this stage of the proceedings. *Cf. Rachel*, 820 F.3d at 397 (holding that the district court did not abuse its discretion in denying pro se prisoner's motion to appoint an expert medical witness before deciding whether defendants were entitled to summary judgment on prisoner's deliberate-indifference claim (citing *Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997)). Accordingly, if the recommended dispositions of Defendants'

Motion to Dismiss and Plaintiff's Motion for Summary Judgment are adopted, the Court should DENY Plaintiff's Motion for Appointment of Expert Witness (Doc. No. 46).

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss (Doc. No. 39), GRANT Plaintiff's Motion for Leave (Doc. No. 57), DENY Plaintiff's Motion for Summary Judgment (Doc. No. 48), and DENY Plaintiff's Motion for Appointment of Expert Witness (Doc. No. 46). Specifically, Defendants' Motion to Dismiss should be DENIED with respect to Defendants' assertion that Defendant Troutt is entitled to qualified immunity on Plaintiff's § 1983 claim of deliberate indifference to Plaintiff's serious constipation and abdominal pain, and GRANTED in all other respects. Plaintiff's ADA claim against Defendant ODOC and state-law IIED claim against Defendants Troutt, Grogan, and McCoy should also be dismissed without prejudice under 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1).

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by September 2, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 12th day of August, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE